## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## MIDLAND/ODESSA DIVISON

| | | |
|---|---|---|
| **DAMON KING, DARRON KING,** | § | |
| **SEBASTIAN PRINCE,** | § | |
| | § | |
| **Plaintiffs,** | § | **CIVIL ACTION NO. 7:21-cv-131** |
| | § | |
| **v.** | § | |
| | § | |
| **STALLION OILFIELD SERVICES,** | § | **JURY TRIAL DEMANDED** |
| **INC.,** | § | |
| | § | |
| **Defendant.** | § | |

## ORIGINAL COMPLAINT

Plaintiffs DAMON KING, DARRON KING, and SEBASTIAN PRINCE ("Plaintiffs" collectively), by and through their attorneys, ELLWANGER LAW LLLP, bring this action for damages and other legal and equitable relief from Defendant, STALLION OILFIELD SERVICES, INC. ("Defendant" or "Stallion"), for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e *et seq.*, Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), 42. § 1981, the Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.001 *et seq.* ("TLC"), and any other cause(s) of action that can be inferred from the facts set forth herein.

## INTRODUCTION

1.      This is a case about a racially hostile work environment cultivated by Defendant at its Midland, Texas rig site and the discrimination, harassment and abuse that coworkers and supervisors lodged against Plaintiffs, some of the few Black employees working for Defendant during their tenure.

2.      Plaintiff Sebastian Prince worked as a Technician at Defendant's Midland location from 2016 to August 2020.

3.      Plaintiffs Darron and Damon King worked as Technicians at Defendant's Midland location from 2014 to August 2020.

4.      Over the course of their time as Stallion employees, Plaintiffs were subjected to pervasive racial discrimination, harassment, and abuse at the hands of their coworkers and supervisors. Stallion's racial discrimination against Plaintiffs ranged from baseless accusations of laziness, to priority of rig assignments given to White employees and White contractors, to outright use of racial slurs directed at Plaintiffs.

5.      Plaintiffs were either brushed off by supervisors when they complained of the discriminatory treatment or subjected to increased discrimination by such supervisors. Retaliation against Plaintiffs ensued.

6.      This is an action brought by Plaintiffs seeking damages from Defendant for these acts of race discrimination and harassment, Defendant's acts of discrimination are in violation of Title VII, Section 1981, the TLC, and any other cause(s) of action that can be inferred from the facts set forth herein.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*.,  and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

ORIGINAL COMPLAINT

8.      The Court's supplemental jurisdiction is invoked under 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts such that they form part of the same case or controversy under Article III of the United States Constitution.

9.      Venue is proper in this Court in as much as the unlawful employment practices occurred in this judicial district.

## PARTIES

10.      Plaintiffs are persons who have been aggrieved by Defendant's actions. They are and have been, at all relevant times, Black men and residents of Texas.

11.      At all relevant times, Plaintiffs were Defendant's employees and therefore covered by Title VII and the TLC.

12.      Upon information and belief, Defendant employs over five-hundred (500) persons. Defendant is headquartered in Houston, Texas and maintains service locations across the country, including a Permian location at 1300 S County Rd. 1140, Midland, TX 79706-4680.

13.      During all relevant times, Defendant has been an employer covered by Title VII and the TLC.

14.      Defendant transacted and continues to transact business in Texas by, among other things, employing persons at multiple facilities located within Texas and within this judicial district, including the Midland site where Plaintiffs worked.

## EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

15.      Mr. Prince, who has herein alleged claims pursuant to Title VII, has timely filed a complaint of discrimination with the Equal Employment Opportunity Commission ("EEOC"), which constitutes a cross-filing with the Texas Commission on Human Rights.

**ORIGINAL COMPLAINT**

16.     Mr. Prince received his Notice of Right to Sue letter from the EEOC prior to the filing of this Complaint.

## STATEMENT OF FACTS RELEVANT TO ALL PARTIES

17.     Plaintiffs worked as Technicians for Stallion.

18.     Throughout their employment with Stallion, Plaintiffs were subject to and observed disparate treatment, a hostile work environment, and retaliation.

19.     Plaintiffs routinely witnessed Black employees systematically terminated in favor of White contractors and White employees.

20.     Plaintiffs witnessed White employees treated differently from Black employees, though they worked in the same position. In situations of misconduct, Black employees were often disciplined more harshly and terminated for less serious reasons. For example, a White employee kept beer in a fridge and drank while on the rig – grounds for automatic termination per Stallion's policies. A Black employee reported the violation to a supervisor. However, within a month, that Black employee was told Stallion had no more work for him, and, upon information and belief, the White employee was not disciplined and continues to work for Stallion.

21.     In or around May 2020, Stallion circulated a memo to employees stating they would be laying off 50% of the contractors and redistributing Stallion employees to various work sites. Instead, Stallion laid off a disproportionate number of Black employees.

## STATEMENT OF FACTS – MR. PRINCE

22.     Mr. Prince began working for Stallion in 2016.

23.     In addition to observing blatant acts of racial discrimination, Mr. Prince was himself subject to such disparate treatment and disproportionate disciplinary action. In his four years at Stallion, Mr. Prince previously had no write ups or performance issues.

**ORIGINAL COMPLAINT**

24.     Six months into his time with Stallion, Mr. Prince was wrongly accused of breaking equipment by a supervisor, Operations Manager Robert Dominguez ("Mr. Dominguez"). A centrifuge that Mr. Prince was operating quit working. When Mr. Dominguez came out to the centrifuge's location, he informed Mr. Prince that the only reason he came out there was to fire Mr. Prince. Mr. Prince asked why he was going to be fired, and Mr. Dominguez responded that he would be fired because he broke the centrifuge. Upon inspection of the centrifuge, however, the real cause of the centrifuge's breakdown was normal wear and tear and buildups of oil and grease. In fact, Mr. Prince had correctly serviced the centrifuge beforehand, a fact immediately evident to Mr. Dominguez.

25.     Not only did Mr. Prince have a clean disciplinary record, but he was one of a few Stallion employees who held the proper certifications to operate any equipment on an oil rig.

26.     In addition to holding the proper certifications, Mr. Prince was the first Stallion employee trained and certified to operate an Oil Recovery Unit ("ORU"). After operating the ORU for two-and-a-half years, Mr. Prince was abruptly moved from this position and told by Stallion that Stallion wanted to train other employees for ORU operation. The move was not random—it coincided with Mr. Prince's involvement in a prior racial discrimination investigation by Stallion.

27.     Shortly after being moved off the ORU, Mr. Prince received a call from his replacement. On this call, Mr. Prince's replacement asked Mr. Prince for assistance in operating the ORU, explaining that Stallion did not train him or his coworkers.

28.     Not only did Stallion fail to train Mr. Prince's replacement, but it sent Mr. Prince to another rig known for its high turnover as an attempt to force his resignation and in retaliation for his involvement in a prior discrimination investigation. In addition, after the close of the prior discrimination investigation in or around January 2020, Mr. Prince was subjected retaliation

**ORIGINAL COMPLAINT**

through increased scrutiny of his daily reports and admonished for his grammar and other trivial details which were insignificant and previously went unaddressed.

29.     Prior to Mr. Prince's move, an excavator rig on site was damaged by one of Mr. Prince's coworkers. The damaged rig happened to have been located where Mr. Prince was subsequently moved. In or around February 2020, soon after Mr. Prince was moved, a Shift Coordinator asked Mr. Prince to send photos detailing the damage. Mr. Prince did so and was informed that the damage was not a big deal.

30.     The following month, in or around March 2020, the same excavator was damaged, again by one of Mr. Prince's coworkers. The damage was reported to Mr. Prince's supervisor, Doug Kudro ("Mr. Kudro") and Mr. Prince again provided photos of the new damage. Mr. Kudro told Mr. Prince's coworker that "it's cool. Not to [sic] worried about it."

31.     In or around May 2020, Mr. Prince was operating the excavator when the door failed to latch, swinging open and hitting the side of the excavator. This resulted in a minor dent on the door. Two days later, Mr. Prince's supervisor reviewed the damage in person and informed Mr. Prince it was not a big deal. Mr. Prince also spoke to the Shift Coordinator, who informed Mr. Prince that he had spoken with Mr. Dominguez and that it would not be an issue.

32.     Months later, in or around August 2020, Mr. Dominguez informed Mr. Prince he was being terminated for the minor door dent that occurred in May 2020. Despite being told by those who saw the dent firsthand that it would not be an issue, Mr. Dominguez informed Mr. Prince that it would cost $16,000 to repair the door. While Mr. Prince disputed the grounds of his termination and followed up with Mr. Dominguez regarding such, no answer was given.

**ORIGINAL COMPLAINT**

33.     Upon information and belief, the necessary repairs to the excavator stemmed not from Mr. Prince's incident, but incidents where other Stallion employees were operating the equipment.

34.     Mr. Prince was subject to retaliation after taking part in a prior investigation by Stallion regarding racial discrimination in 2019.  Stallion took its ultimate retaliatory step in August 2020 when it terminated Mr. Prince's employment.

## STATEMENT OF FACTS – DAMON KING

35.     Damon King began working for Defendant as a Technician in 2014.

36.     During the course of his employment with Stallion, Damon King witnessed White co-workers fail to show up for their shifts, show up for their shifts intoxicated, and/or break vital company equipment with little to no correction or discipline.

37.     In or around July 2020, Damon King witnessed a White Stallion employee fall asleep in an excavator, which resulted in a centrifuge being destroyed beyond repair and causing tens of thousands of dollars in damage. Upon information and belief, the White employee was simply moved to another rig, the one Darron King was working on, and continues to work for Stallion to this day.

38.     In or around Fall 2019, Damon King was informed by Shift Coordinator Caesar (last name unknown) that he would be sent to a rig that he requested that was in need of workers. Damon King was informed of such before taking scheduled days off. Upon his return to work, Caesar refused to send Damon King to the previously agreed upon rig. No reasoning was given by the Shift Manager for the refusal.

39.     In or around December 2020, Damon King was scheduled to serve as a technician on three separate rigs simultaneously. Damon King approached his supervisor, Mr. Dominguez,

for help remedying the situation, as it was untenable for him to serve as technician on three rigs simultaneously during his shift. Mr. Dominguez then accused Damon King of being lazy and asked if Damon King was refusing to work.

40.     Damon King was continually made to work on rigs that were on their way out of service. Requests for transfers to other rigs were constantly denied in favor of retaining White contractors or White Stallion employees. Even still, other Stallion employees specifically requested that Damon King be assigned to rigs needing technicians.

41.     While Black employees' specific rig assignment requests were regularly denied, White employees and White contractors with significantly less experience than Damen King had their requests granted.

42.     On or around August 6, 2020, Damon King was told by his White supervisor, "I just don't have any work for you right now. Take your days off and if anything comes up, I'll call you." This had the effect of essentially terminating Damon King.

43.     Upon information and belief, White employees with significantly less experience than both Darron and Damon King and with histories of misconduct or workplace accidents are still actively employed by Stallion.

44.     Despite Stallion management stating layoffs were due to economic downturn, the very positions Damon King previously occupied were posted for fulfillment on Stallion's website as of September 30, 2020. Damon King was never contacted to return to work and their calls to Stallion have gone unreturned.

45.     In or around early 2021, Stallion supervisor Doug (last name unknown) attempted to hire both Damon and Darron King back on at Stallion.  However, his request was denied by Caesar.

**ORIGINAL COMPLAINT**

46.     Damon King was also subjected to numerous racist comments and racial slurs throughout his employment with Stallion. Damon King was referred to as a "boy" several times a week since 2017 by White coworkers and supervisors. Each time Damon King confronted his White supervisors and asked to be called by his name or referred to as a man, he was dismissed.

47.     Every few months dating back through at least 2017, Damon King was subjected to White coworkers using racial slurs such as "nigger" towards other Stallion employees while knowingly in his presence. White coworkers also used other racist terms such as "wetback" to insult one another on a weekly basis. Upon information and belief, these coworkers did so as a way to intimidate Damon King into either quitting or tolerating their workplace racism.

48.     In or around 2018, Damon King was riding in a Stallion truck with his then supervisor who was on speakerphone with another White Stallion employee when they said, "We've got all these niggers working here and they don't want to do shit." Damon King's supervisor immediately took the conversation off speakerphone and apologized to Damon King after the conversation ended.

### STATEMENT OF FACTS – DARRON KING

49.     Darron King began working for Defendant as a Technician in 2014.

50.     While employed with Stallion, Darron King witnessed White co-workers routinely break company policy by failing to show up for their shifts, showing up for their shifts intoxicated, and/or breaking vital company equipment. These infractions were met with little to no correction or discipline.

51.     Darron King was continually made to work on rigs that were on their way out of service. Requests for transfers to other rigs were constantly denied in favor of retaining White

contractors or White Stallion employees. Even still, other Stallion employees specifically requested that Darron King be assigned to their rigs, which were in need of technicians.

52.     While Black employees' specific rig assignment requests were regularly denied, White employees and White contractors with significantly less experience than Darron King had their requests granted.

53.     On or around August 6, 2020, Darron King was told by his White supervisor, "I just don't have any work for you right now. Take your days off and if anything comes up, I'll call you." This had the effect of essentially terminating Darron King.

54.     Upon information and belief, White employees with significantly less experience than Darron King and with histories of misconduct or workplace accidents are still actively employed by Stallion.

55.     Despite Stallion management stating layoffs were due to economic downturn, the very positions Darron King previously occupied were posted for fulfillment on Stallion's website as of September 30, 2020. Darron King was never contacted to return to work and their calls to Stallion have gone unreturned.

56.     In or around early 2021, Stallion supervisor Doug (last name unknown) attempted to hire both Damon and Darron King back on at Stallion.  However, his request was denied by Caesar.

57.     Darron King was also subjected to numerous racist comments and racial slurs throughout their employment with Stallion. Darron King was referred to as "boy" several times a week since 2017 by White coworkers and supervisors. Each time Darron King confronted his White supervisors and asked to be called by his name or referred to as a man, he was dismissed.

**ORIGINAL COMPLAINT**

58.     Every few months dating back through at least 2017, Darron King was subjected to White coworkers using racial slurs such as "nigger" towards other Stallion employees while knowingly in his presence and in the presence of management. White coworkers also used other racist terms such as "wetback" to insult one another on a weekly basis. Upon information and belief, these coworkers did so as a way to intimidate Darron King into either quitting or tolerating their workplace racism.

### AS AND FOR A FIRST CAUSE OF ACTION FOR A VIOLATION OF
### Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*
### (Hostile Work Environment – Plaintiff Sebastian Prince)

59.     Plaintiff Sebastian Prince is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

60.     The conduct alleged herein violates Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, as Plaintiff Sebastian Prince was subjected to a hostile work environment on the basis of race.

61.     Plaintiff Sebastian Prince's requests for relief are set forth below.

### AS AND FOR A SECOND CAUSE OF ACTION FOR A VIOLATION OF
### Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*
### (Discrimination – Plaintiff Sebastian Prince)

62.     Plaintiff Sebastian Prince is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

63.     The conduct alleged herein violates Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, as Plaintiff Sebastian Prince was discriminated against in disciplinary action and ultimately constructively discharged on the basis of race.

64.     Plaintiff Sebastian Prince's requests for relief are set forth below.

**ORIGINAL COMPLAINT**

**AS AND FOR A THIRD CAUSE OF ACTION FOR A VIOLATION OF**
**Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e** *et seq.*
**(Retaliation – Plaintiff Sebastian Prince)**

65.     Plaintiff Sebastian Prince is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

66.     The conduct alleged herein violates Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, as Plaintiff Sebastian Prince engaged in protected activity in reporting the hostile work environment and discrimination and was subjected to retaliation in the form of adverse employment actions increased harassment and constructive discharge from his employment.

67.     Plaintiff Sebastian Prince's requests for relief are set forth below.

**AS AND FOR A FOURTH CAUSE OF ACTION FOR A VIOLATION OF**
**The Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.001** *et seq.*
**(Hostile Work Environment – Sebastian Prince)**

68.     Plaintiff Sebastian Prince is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

69.     The conduct alleged herein violates the Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.001 et seq., as Plaintiff Sebastian Prince was subjected to a hostile work environment on the basis of race.

70.     Plaintiff Sebastian Prince's requests for relief are set forth below.

**AS AND FOR A FIFTH CAUSE OF ACTION FOR A VIOLATION OF**
**The Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.001** *et seq.*
**(Discrimination – Sebastian Prince)**

71.     Plaintiff Sebastian Prince is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

**ORIGINAL COMPLAINT**

72.     The conduct alleged herein violates the Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.001 *et seq.*, as Plaintiff Sebastian Prince was discriminated against in promotions and pay and ultimately constructively discharged on the basis of race.

73.     Plaintiff Sebastian Prince's requests for relief are set forth below.

### AS AND FOR A SIXTH CAUSE OF ACTION FOR A VIOLATION OF
**The Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.001 *et seq.***
**(Retaliation – Sebastian King)**

74.     Plaintiff Sebastian Prince is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

75.     The conduct alleged herein violates the Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.001 *et seq.*, as Plaintiff Sebastian Prince was subjected to a hostile work environment through denial of promotions and in the terms and conditions of his employment on the basis of race.

76.     Plaintiff Sebastian Prince's requests for relief are set forth below.

### AS AND FOR A SEVENTH CAUSE OF ACTION FOR A VIOLATION OF
**Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981**
**(Racial Discrimination)**

77.     Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

78.     Defendants violated 42 U.S.C. §1981 which guarantees Plaintiffs the right to "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship" free from "nongovernmental discrimination" and with "the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens."

**ORIGINAL COMPLAINT**

79.     Plaintiffs have suffered emotional damages as a result of Defendants' unlawful racially discriminatory conduct and are therefore entitled to equitable and monetary relief as well as attorneys' fees under 42 U.S.C. §1988.

80.     Plaintiffs' further requests for relief are set forth below.

## AS AND FOR AN EIGHTH CAUSE OF ACTION FOR A VIOLATION OF
### Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981
### (Retaliation)

81.     Plaintiffs re-allege and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

82.     Defendant violated 42 U.S.C. §1981 which guarantees Plaintiffs the right to "make and enforce contracts," which encompasses the right against retaliatory employment actions for exercising one's rights under this law.

83.     Plaintiffs have suffered emotional damages as a result of Defendant's unlawful retaliatory conduct and are therefore entitled to equitable and monetary relief as well as attorneys' fees under 42 U.S.C. §1988.

84.     Plaintiffs' further requests for relief are set forth below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request judgment against Defendant as follows:

A. A judgment declaring that the practices complained of herein are unlawful and in violation of the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, the Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.001 *et seq.* ("TLC").;

B. All damages that Plaintiffs have sustained as a result of Defendant's conduct, including back pay, front pay, benefits, general and specific damages for lost

ORIGINAL COMPLAINT

compensation, and job benefits they would have received but for Defendant's discriminatory practices, and for emotional distress, humiliation, embarrassment, and anguish;

C. Exemplary and punitive damages in an amount commensurate with Defendant's ability and so as to deter future malicious, reckless, and/or intentional conduct;

D. Awarding Plaintiffs the costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs;

E. Pre-judgment and post-judgment interest, as provided by law;

F. That the Court retain jurisdiction over Defendant until such time as it is satisfied that they have remedied the practices complained of and are determined to be in full compliance with the law; and

G. Granting Plaintiffs other and further relief as this Court finds necessary and proper.

Plaintiff also seek injunctive relief, including, but not limited to:

H. Training on the subject of employment discrimination for all of Defendant's employees;

I. Training of all employees regarding racial harassment and discrimination, including the reporting procedures for reporting such harassment, conducted by reputable outside vendors;

J. Supervisory discipline up to and including termination for any employee who engages in unlawful discrimination, including racial harassment;

K. Active monitoring of the work areas to ensure compliance with discrimination policies;

**ORIGINAL COMPLAINT**

L.  Monitoring by the Court or a federal agency to ensure that Defendant complies with all injunctive relief; and

Plaintiffs further demands that they be awarded such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by this Complaint.

Dated: July 23, 2021

Respectfully submitted,

*/s/ Jay D. Ellwanger*

Jay D. Ellwanger
Texas State Bar No. 24036522
jellwanger@equalrights.law
**ELLWANGER LAW LLLP**
8310-1 N. Capital of Texas Hwy., Ste. 190
Telephone: (737) 808-2260
Facsimile:  (737) 808-2238

**ORIGINAL COMPLAINT**